IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Floyd Benenhaley Jr., #304988,     )<br>aka Floyd L. Benenhaley, Jr.         )<br>                  Plaintiff,     )<br>                            )<br>v.                               )<br>                            )<br>South Carolina Department of       )<br>Corrections; Direct Jon Ozmint, SCDC;  )<br>Terry Bracey, Major, Rapid Response   )<br>Team; Elwood Sessions, Captain,    )<br>Rapid Response Team,             )<br>                            )<br>                Defendants.     ) | Civil Action No. 8:08-2717-PMD-BHH<br><br>**<u>AMENDED</u>**<br>**<u>REPORT AND RECOMMENDATION</u>**<br>**<u>OF MAGISTRATE JUDGE</u>** |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment. [Doc. 13] The plaintiff alleges that the defendants assaulted him without justification, while he was handcuffed.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

## APPLICABLE LAW

**LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT**

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A pro se complaint, "can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (U.S. 1976). A court may not construct the petitioner's legal arguments for him. *See Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

> that there is no genuine issue as to any material fact and that
> the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are

insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

### I.     Excessive Force Claim

The plaintiff claims that the defendants violated his Eighth Amendment right to be free from excessive force. He contends that during "an institutional shakedown" he was handcuffed behind his back. (Compl. at 3.) The plaintiff alleges that after he was escorted out of his "living unit" he was assaulted by defendant Terry Bracey while he

4

was still in handcuffs. *Id*. at 4. The plaintiff contends that he suffered bruises on his face, ribs, chin; a dislocated toe; and a chipped tooth. *Id*.

To establish an Eighth Amendment claim for cruel and unusual punishment, the plaintiff must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The objective component requires the inmate to prove that the use of force was more than *de minimis* or, in the alternative, that it was repugnant to the conscience of mankind. *Id*. at 9-10. *De minimis* injury can be conclusive evidence that the force used was also *de minimis* and, therefore, not violative of constitutional protections. *See Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir.1994).

### A.    Subjective Component of Take Down Claim

To prove the subjective component of his claim, the plaintiff must show that an officer acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The state of mind required in excessive force claims is "wantonness in the infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). "Put differently, the core judicial inquiry regarding the subjective component of an excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir.2008) (internal quotations and citation omitted).

In *Whitley*, the Supreme Court set forth four non-exclusive factors to assist courts in assessing whether an officer has acted with "wantonness": (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321 (internal quotations omitted) (applying these factors in a prison riot case); *see Hudson*, 503 U.S. at 7 (extending the *Whitley* standard "to all allegations of excessive force").

The Court concludes that the plaintiff has created issues of fact regarding the subjective component of his claim. If the plaintiff's version of the facts are believed, then a reasonable jury would be justified in concluding that there was no reason for the force used; that the force was, thus, disproportionate to any perceived threat; and, therefore, was applied sadistically and maliciously and not in a "good-faith effort to maintain . . . discipline" and security, *Iko*, 535 F.3d at 238. As stated, the plaintiff claims that defendant Bracey assaulted him without provocation and while the plaintiff was immobilized in handcuffs. Specifically, he claims to have been struck in the face and head, notwithstanding his cooperation. Actions "totally without penological justification" can constitute "unnecessary and wanton inflictions of pain." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (quotations omitted).

6

The defendants dispute the plaintiff's version of the facts. (See Verified Compl.) They have submitted affidavits swearing that the plaintiff was struggling and that, while being escorted, he "dropped his weight" causing both the plaintiff and the guards to "fall to the floor." (Sessions Aff. ¶ 6; Bracey Aff. ¶ 6.) The defendants contend that the injuries suffered by the plaintiff were a result of the plaintiff having hit his head on the wall as he fell. (Sessions Aff. ¶ 7; Bracey Aff. ¶ 7.) The defendants contend there is no evidence that they ever verbally or physically assaulted the plaintiff.

Of course, there is – namely, in the form of the plaintiff's testimony to the contrary. A jury surely would be permitted to believe the plaintiff over the guards as to the encounter. Moreover, the plaintiff has submitted the witnessed declaration of at least one individual who claims to have observed defendant Bracey striking the plaintiff in the back of the head, while handcuffed. (See Copeland Decl. at 2.) While the defendants dispute the account, the plaintiff's evidence at least creates an issue of fact as to whether the plaintiff was compliant when the defendants struck him, thereby, rendering their actions without any penological justification.

The defendant officers would not enjoy qualified immunity for such actions, as alleged. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). At all times relevant to this case, the defendants would have been fully aware that the plaintiff's right to be free from force employed "maliciously and sadistically for the very purpose of causing harm" was clearly established and that they could not physically assault the plaintiff without cause while he was in handcuffs. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

7

**B.     Objective Component**

In a single sentence, the defendants summarily argue that the plaintiff has also failed to show anything more than a *de minimis* injury and, therefore, cannot satisfy the objective element of his claim. The Court disagrees and finds that evidence of serious harm exists in the record.

As to the objective component of the test, an injury is "sufficiently serious" if it rises above the level of *de minimis* harm. *Hudson*, 503 U.S. at 9-10. *De minimis* injury can be conclusive evidence that the force used was also *de minimis* and, therefore, not violative of constitutional protections. *See Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir.1994). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973). *See also Williams,* 77 F.3d at 761 (holding prison officials are entitled to use appropriate force to quell prison disturbances, and acting under pressure without the luxury of a second chance, an inmate must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm).

It appears that issues of fact remain as to whether the plaintiff can establish the objective element of his claim.

8

The medical records evidence the following injuries: superficial scrapes on the plaintiff's knees, two knots on the plaintiff's head approximately the "size of [a] ping pong ball," two "pea-sized" nodules on the side of his head, and a swollen and bruised left zygomatic bone. (Coley Aff. ¶ 5 & Ex. A.)  Additionally, the medical summary indicates that the plaintiff claimed his tooth was chipped during the incident and he was, in fact, referred "to dental" as a result. (Coley Aff., Ex. A at 1-2.)  The defendants medical affidavit, submitted by Linda Coley, an LPN, does not, in the Court's estimation, fairly summarize the injuries actually sustained by the plaintiff as reflected in the medical summary attached as Exhibit A thereto.  To the Court, evidence of "ping-pong" sized knots and a chipped tooth creates issues of fact as to whether the plaintiff's injuries were sufficiently serious to satisfy the objective claim.  *See, e.g.*, Elliott v. Linnell, 561 F. Supp. 2d 714, 719 (E.D. Tex. 2007) (finding that jury could conclude that chipped tooth constituted more than a *de minimis* injury); (*Huggins v. Johnson*, 2006 WL 3667254, at *4 (N.D. Fla. Dec.12, 2006) (finding that repeated punching and kicking of inmate's face and head while he was handcuffed and lying on the ground, causing extreme swelling to face, black eye, chipped tooth, and injury to right knee, could constitute more than *de minimis* use of force); *Borroto v. McDonald*, 2006 WL 2789152, at *1 (N.D. Fla. Sept. 26, 2006) (beating a handcuffed prisoner and slamming his head on the floor causing pain, with no legitimate purpose other than to cause pain, violates the Eighth Amendment even though the injuries, a few bruises, are not significant).  These are not superficial injuries and evidence greater force than a mere push or shove.  *See Johnson*, 481 F.2d at 1033.

Accordingly, the plaintiff has established issues of fact as to both components of his Eighth Amendment claim.

## II.     Exhaustion of Administrative Remedies

The defendants also contend that the plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. In *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id*. (Internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. *Id*.

The Court takes notice that in order to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters

10

raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five days of the receipt of the response from the Warden. A responsible official has sixty days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983. 42 U.S.C. § 1997e.

The defendants concede that the plaintiff filed Step I and II Grievances and that they were both denied. The defendants argue, however, that the plaintiff failed to appeal those determinations to an administrative law judge, in accordance with the Administrative Procedures Act. Relying on *Al-Shabazz v. State of South Carolina*, 527 S.E.2d 742 (S.C. 2000), the defendants contend that to exhaust all available remedies under South Carolina Law, the plaintiff must affect such an appeal.

The PLRA, however, requires the exhaustion of remedies within the agency only and does not require resort to the appellate state courts. *Woodford*, 126 S.Ct. at 2386. This district has agreed that, to exhaust their administrative remedies, inmates are not required to go beyond a Step 2 grievance. *See Brown v. Evans Correctional Institution*

*Medical Staff*, 2007 WL 1290359, at*4 (D.S.C. April 30, 2007) ("In sum, the fact that the South Carolina legislature made a court available to prisoners who wanted to appeal a final decision by the SCDC denying a SCDC grievance does not alter the federal PLRA by extending its administrative exhaustion requirement to include exhaustion in all state judicial forums."); *Charles v. Ozmint*, 2006 WL 1341267 (D.S.C. May 15, 2006) (recognizing that completion of Step 2 grievance exhausts administrative remedies and § 1997(a) does not require inmates to further appeal to Administrative Law Court).

Accordingly, the Court does not recommend dismissal for any failure to exhaust administrative remedies.

## **CONCLUSION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment [Doc. 13] should be DENIED.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks<br>
United States Magistrate Judge

March 20, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).